**Thomas LODATO, Plaintiff,**

v.

**Alfaro ORTIZ, et. al., Defendants.**

**No. CIV.A. 02–2803(FSH).**

United States District Court,
D. New Jersey.

April 16, 2004.

Jonathan Morris Hyman, Newark, NJ, for Plaintiff.

## OPINION

HOCHBERG, District Judge.

**Introduction:**

This Matter calls upon the Court to determine whether to grant the Motion for Summary Judgment brought by the Defendants, former Northern State Prison ("NSP") Administrator Alfaro Ortiz, former NSP Assistant Superintendent Russell Henry, and John Does defendants 1, 2, and 3 ("State Defendants"). The Plaintiff, Thomas Lodato ("Lodato"), an inmate in the custody of the New Jersey Department of Corrections ("DOC"), currently housed at Northern State Prison in Newark, New Jersey, alleges that the State Defendants violated his first amendment rights when they placed him back into NSP's Administrative Segregation Unit after the Behavior Modification Unit program ("BMU") was discontinued. The Defendants have moved for summary judgment on the grounds that: 1) Lodato failed to exhaust his administrative remedies; and 2) the Defendants are entitled to qualified immunity.

**Facts:**

**I. Transfer to Administrative Segregation:**

The BMU was a program instituted at NSP on March 20, 2002. It was designed to help reintegrate special needs inmates into the general prison population. Prisoners who were transferred from Administrative Segregation to the BMU were to serve a 30–day trial period. If they were accepted into the BMU program after this trial period, a recommendation was made to the Special Administrative Segregation Review Committee ("SASRC") that the remainder of their Administrative Segregation be suspended. The BMU program was discontinued on May 21, 2002, because of lack of staff.

Lodato was placed in the BMU on March 22, 2002. On March 21, Defendant Ortiz authorized suspension of Lodato's Administrative Segregation time pending completion of his treatment in the BMU. Although Ortiz' memorandum authorizing this suspension indicated that it was copied to the SASRC, Lodato's classification file, and the Prison Psychology Department, the SASRC states that it initially found no record of the memo. On May 18, 2002, Lodato filed an Inmate Request Form complaining that a corrections officer used excessive force against another prisoner. The prison authorities indicated on the form that the incident was under investigation and that witnesses would be interviewed. About four days later, on or about May 21, 2002, the BMU was discontinued, and the SASRC placed Lodato back into Administrative Segregation. Lodato and his cell mate, Tormu Prall, were the only two prisoners to be transferred to Administrative Segregation after the BMU was discontinued. On June 6, 2002, Lodato filed his initial Complaint with this Court, alleging that he was transferred to Administrative Segregation in retaliation

for exercising his first amendment rights, including the filing of grievances.[1] About one month later, on July 1, 2002, the SASRC placed Lodato back into the general prison population after it received a copy of Ortiz' memo.

## II. Exhaustion of Administrative Remedies:

Lodato asserts that he filed a grievance regarding his transfer to Administrative Segregation, but Peggy Brooks, a prison official responsible for tracking reviews of inmate request forms and administrative request forms (the forms used to file grievances), cannot find a record of it. However, the database she used to check for these requests did not contain a record of two similar grievances filed by Tormu Prall, Lodato's cellmate, despite the fact that there is no dispute that Prall did submit these forms. (Plaintiff has submitted copies of Prall's inmate request forms that Brooks could not locate.) In addition, she relied on a system of numbering that may not actually track all the forms a prisoner submits. The Inmate Request and Administrative Remedy forms that Lodato later submitted in January 2004 do not contain any such number, suggesting that Ms. Brooks' search would not have located these forms either. On these 2004 grievance forms, the prison staff indicated "Reappeal Ad Seg Placement" and "Be advised that according to the records in the IRF dept., you have submitted (1) IRf regarding a classification issue."

Lodato also asserts that Prall filed a grievance on his behalf, but the Defendants contend that this is not permitted by prison policy. It is uncontested that Lodato's cell mate, Prall, did file an inmate request form on June 23, 2002, in which he complained that both he and Lodato were wrongly placed in Administrative Segregation. The policy for administrative remedy/grievances states, "The ADMINISTRATIVE REMEDY FORM is to be prepared and signed only by the inmate submitting the complaint. Inmates are not to write forms for other inmates or as part of a 'Class Action.'" Similarly, the policy regarding inmate request forms states that they are "to be prepared and signed only by the inmate submitting the problem/concern. Inmates are not to write request forms for other inmates."

However, Lodato asserts that he was entitled to rely on Prall's submission because the prison did not notify inmates of this policy. These policy statements were not distributed to prisoners. Each explicitly states, as a restriction, that "[t]his policy is for exclusive use by staff members of the New Jersey Department of Correction and, [sic] shall at no time, be discussed, disseminated or shown to inmates, parolees or any unauthorized persons." The material regarding Administrative Remedies that was available to Lodato did not so clearly state that prisoners are not entitled to include their claims in grievances filed by other prisoners, although the Inmate Handbook does state that "[t]he Administrative Remedy Procedure is to be used for seeking a remedy that affects the individual personally."

Moreover, Lodato submitted an inmate request form on May 18, 2002, complaining that a corrections officer used excessive force against **another** prisoner, and the prison officials did not reject the form on the grounds that Lodato filed it on behalf of another inmate. Nor did the officials provide Lodato with a "Staff Corrective

---

1. Lodato amended his Complaint on September 18, 2002. He also filed an administrative grievance (what he believes to be a second grievance) regarding the alleged retaliatory transfer in January 2004.

Action Form," which, according to the posted policy, should be used to re-direct or provide information to inmates when they should be using a different, more appropriate form or action in accordance with other Departmental or Institutional policies and/or procedures. Rather, the prison authorities indicated on Lodato's inmate request form that the incident was under investigation and that witnesses would be interviewed.

**Analysis:**

**I. Legal Standard:**

Pursuant to Fed.R.Civ.P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In other words, "summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988). A fact is material if it might affect the outcome of the case, and an issue is genuine if the evidence is such that a reasonable fact finder could return a verdict in favor of the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505; *In re Headquarters Dodge*, 13 F.3d 674, 679 (3d Cir.1993).

All facts and inferences must be construed in the light most favorable to the non-moving party. *Peters v. Delaware River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir.1994). The party seeking summary judgment always bears the initial burden of production. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. This requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the non-moving party has not shown the requisite facts relating to an essential element of an issue for which it bears the burden. *See id.* at 322–23, 106 S.Ct. 2548.

Once the party seeking summary judgment has carried this initial burden, the burden shifts to the non-moving party. To avoid summary judgment, the non-moving party must demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of "genuine issue[s] of material fact" justifying trial. *Miller*, 843 F.2d at 143; *see also, Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548.

If a moving party satisfies its initial burden of establishing a *prima facie* case for summary judgment, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348 (*quoting First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)).

**II. Exhaustion:**

*A. The Prison Litigation Reform Act:*

The Prison Litigation Reform Act of 1996 ("PLRA") requires prisoners asserting a claim under 42 U.S.C. § 1983 to exhaust administrative remedies. Even if the prison's administrative process does not provide for the type of relief the inmate desires, such as money damages, the prisoner must complete any prison admin-

istrative process capable of addressing the inmate's complaint and providing some form of relief. *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir.2000). There is no futility exception to these requirements. *See Nyhuis*, 204 F.3d at 67. The exhaustion requirement applies to the grievance procedure in an inmate handbook that is not formally adopted by a state administrative agency. *Concepcion v. Morton*, 306 F.3d 1347, 1348–1349 (3d Cir.2002). However, prisoners are only required to exhaust those administrative remedies that are "available" to them. 42 U.S.C. § 1997e(a)(2004); *Days v. Johnson*, 322 F.3d 863 (5th Cir.2003)(defining available as immediately utilizable and being accessible or obtainable). The Court need not require a prisoner to exhaust administrative remedies when the procedures are unclear and vague. *In re Bayside Prison Litigation*, 190 F.Supp.2d 755, 772 (D.N.J.2002)(holding that when the language in a prison handbook is unclear and leaves the impression that the grievance procedure is optional, it does not constitute an available remedy). The failure of a prisoner to exhaust administrative remedies is an affirmative defense. The Defendants have the burden of production and persuasion. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir.2002).

### B. *Application to Lodato:*

■ Summary Judgment on the grounds of exhaustion is inappropriate where the prison files are kept as poorly as they appear to have been in this case. A reasonable fact finder could conclude that the evidence proves that Lodato did fulfill the exhaustion requirements, but

that his paperwork was lost or not filed properly within the prison's administrative system. On the Inmate Request Form that Lodato filed in January 2004 regarding his transfer to Administrative Segregation, a prison official noted in writing, "Reappeal Ad Seg Placement" and "[B]e advised that according to the records in the IRF dept., you have submitted (1) IRf (sic) regarding a classification issue." These notations create a genuine issue of material fact as to whether Lodato previously filed the appropriate forms and exhausted his administrative remedies.

■ Lodato has set forth additional facts indicating that the prison filing system is faulty and haphazard, enabling a reasonable fact finder to conclude that Lodato did exhaust his administrative remedies, despite the fact that the prison officials do not have a complete record of the grievances he claims to have filed. It is uncontested that Prall submitted two complaints regarding his transfer to Administrative Segregation, and that one of these complaints alleged that Lodato had also been improperly transferred.[2] Yet, the database used to check for the request Lodato believes he filed on his own behalf also does not contain a record of the grievances indisputably filed by Prall. Also, as described in the fact section above, in attempting to locate Lodato's submissions, the prison relied on a system of numbering that may not actually track all the forms a prisoner submits.

### III. Qualified Immunity:

#### A. *Qualified Immunity Standard:*

■ Qualified immunity is available to government officials performing discre-

---

**2.** This Court also denies summary judgment on the issue of whether Prall's submission naming Lodato can be applied to Lodato for exhaustion purposes because issues of fact

remain as to whether the prison actually notified prisoners of and applied the policy of refusing to allow inmates to submit grievances on behalf of others.

tionary functions. *Harlow v. Fitzgerald*, 457 U.S. 800, 816, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982). It is an "entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 2155, 150 L.Ed.2d 272 (2001)(quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)). Issues regarding qualified immunity must be resolved at the earliest possible stage of litigation. *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991)).

 To determine whether a government officer is entitled to qualified immunity, a two-part test applies. First, it must be determined if, "taken in the light most favorable to the party asserting the injury, . . the facts alleged show the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. Second, the Court must ask whether the right is clearly established. *Id.* The second prong of the inquiry depends on the particular facts and circumstances of the case. To determine whether a right is clearly established, the Court asks whether a reasonable official, in the situation he confronted, would know that his conduct violated a constitutional right. *Id.* at 202, 121 S.Ct. 2151. It is not necessary to reach the second part of the test if the facts alleged cannot support a claim for the violation of a constitutional right.

B. *Application to the State Defendants:*

 The State Defendants assert that regardless of whether the Plaintiff exhausted his administrative remedies, they are entitled to qualified immunity. Ordinarily, subjective intent is not relevant to determining whether an official is enti-

tled to qualified immunity. However, in a retaliation claim, the officials' intent is central to the first question of whether the prisoner states a claim for the violation of a constitutional right. *Crawford–El v. Britton*, 523 U.S. 574, 589, 118 S.Ct. 1584, 1592, 140 L.Ed.2d 759 (1998). Because there is a genuine issue of material fact regarding the Defendants' motive in transferring Lodato to Administrative Segregation after the BMU was discontinued, and because the right to file grievances without being retaliated against via transfer to Administrative Segregation is a clearly established right, summary judgment based on qualified immunity is inappropriate in this case.

 To succeed with a retaliatory transfer claim, the Plaintiff must show that: 1) the conduct which led to the alleged retaliation was constitutionally protected; 2) he suffered an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and 3) there is a causal link between the exercise of his constitutional rights and the adverse action taken against him (i.e. improper motive). *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir.2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir.2003); *see also, Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). If all three elements of the claim are met, the burden shifts to the Defendants to show that the adverse action would have occurred absent the protected conduct. *Rauser*, 241 F.3d at 333; *Floyd v. Dugal*, Civ. A. 99–1616, 2003 WL 23101802, at * 5 (E.D.Pa.2003).

 Lodato has met his burden of proving the first two elements of retaliation listed above.[3] First, it is well estab-

---

**3.** Indeed, the Defendants do not argue that Lodato has failed to satisfy the first two prongs.

lished that the filing of grievances is constitutionally protected. *Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987); *Tate v. Dragovich,* Civ. A. 96–4495, 2003 WL 21978141, at * 13 (E.D.Pa.2003)(citing cases); *Milhouse v. Carlson,* 652 F.2d 371, 373–374 (3d Cir. 1981). Second, transfer to administrative segregation is sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Atkinson v. Taylor,* 316 F.3d 257, 270 (3d Cir.2003)(holding that the prison officials were not entitled to qualified immunity when the plaintiff alleged that they retaliated against him by, *inter alia,* placing him in administrative segregation for the grievances he filed complaining about exposure to Environmental Tobacco Smoke). Thus, the question of whether to grant summary judgment in this case turns on whether a reasonable fact finder could conclude that Lodato can satisfy the third factor in the test for retaliation by showing a causal link between his exercise of his constitutional rights and the transfer to Administrative Segregation.[4]

In *Crawford–El,* the United States Supreme Court addressed the level of proof a plaintiff must submit to defeat a defendant's motion for summary judgment based on qualified immunity, in a case in which the officials' improper motive is an essential element of the constitutional claim. 523 U.S. at 578, 118 S.Ct. 1584. The Supreme Court recognized that claims involving prison officials' improper motive pose a difficult problem in terms of qualified immunity because improper motive is easy to allege and hard to disprove. Nevertheless, the Court refused to impose on the Plaintiff the burden of presenting clear and convincing evidence of improper motive at the summary judgment stage. *Id.* at 584–585, 118 S.Ct. 1584.

 If the Plaintiff sets forth specific, non-conclusory facts of improper motive, as Lodato has, and thus has been permitted limited discovery, a court may grant a defendant's motion for summary judgment based on qualified immunity only if the plaintiff has failed to identify affirmative evidence from which a jury could find that the plaintiff has carried his burden of proving the pertinent motive. *Id.* at 598–600, 118 S.Ct. 1584. The facts that the Plaintiff has set forth to show improper motive are, *inter alia,:* 1) the memo authorizing his suspension of Administrative Segregation showed that it was copied to his file, the SASRC, and the Prison Psychology Department; 2) he and his cell mate were the only two inmates to be moved to Administrative Segregation after the BMU was discontinued; 3) Dr. Eiges, a prison psychologist, testified that he was rebuffed when he related Lodato's complaint about his wrongful placement to one of the Defendants, undermining the Defendants' argument that they acted swiftly to rectify their mistake; 4) the Defendants transferred Lodato to Administrative Segregation four days after he

---

4. The Defendants in this case also argue that they are entitled to qualified immunity because their decision to put Lodato in Administrative Segregation does not violate any liberty interest held by the Plaintiff. This argument misses the point. It is not necessary that the conduct underlying the retaliation claim itself violate the constitution. *See, Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir.2001)(holding that the relevant question in a retaliation case is not whether the Plaintiff had a "protected liberty interest in the privileges he was denied, but whether he was denied those privileges in retaliation for exercising a constitutional right."); *Castle v. Clymer,* 15 F.Supp.2d 640, 661 (E.D.Pa.1998)(explaining that an act in retaliation for the exercise of a constitutionally protected right is actionable under 42 U.S.C. § 1983 even if the act when taken for different reasons would have been proper). Rather, it is necessary that the alleged retaliatory conduct chilled the Plaintiff's exercise of his constitutional rights.

filed a grievance complaining that a corrections officer used excessive force against another prisoner; and 5) the Defendants did not release Lodato from Administrative Segregation until after Lodato filed his Complaint with this Court.[5] From this evidence, a reasonable fact finder could conclude that the Defendants acted, not out of mistaken belief that Lodato's Administrative Segregation time had not been suspended,[6] but rather, out of an improper desire to punish him for exercising his constitutional rights. Thus, genuine issues of material fact exist as to whether Lodato can demonstrate a causal link between the transfer and his exercise of his constitutional rights.

█ Because the facts, construed in the light most favorable to the Plaintiff, can support a claim for the violation of a constitutional right, this Court must proceed to the second stage of the qualified immunity analysis and determine whether the alleged constitutional right is clearly established. Under the facts and circumstances of this case, the right allegedly violated is a clearly established one. A reasonable official would understand that transferring a prisoner to Administrative Segregation to retaliate against him for exercising his constitutional right to file grievances is a violation of the law. Therefore, summary judgment based on qualified immunity is inappropriate.

**Conclusion:**

The Defendants' Motion For Summary Judgement is denied. Genuine issues of material fact exist as to whether the Plaintiff exhausted his administrative remedies and as to whether the Defendants transferred Lodato to Administrative Segregation to retaliate against him for exercising his constitutional rights. The time line of events leading up to Lodato's transfer to Administrative Segregation and ultimate transfer back to the general prison population raises genuine issues of material fact regarding the Defendants' motives, precluding summary judgment. An appropriate order will issue.

---

**5.** The Plaintiff also argues that qualified immunity should be precluded as law of the case because the Court already denied the Defendants' motion to dismiss based on qualified immunity. This argument must fail. The defense can be denied on a motion to dismiss, yet upheld on a motion for summary judgment. Indeed, this Court's prior order denying the motion to dismiss noted that added discovery would clarify issues in the case including the issue of qualified immunity for the retaliation claim. At the same time, the Defendants' argument that the Plaintiff con-

ceded that qualified immunity applies also fails. The Plaintiff did not rely on the law of the case doctrine; he also argued the merits of the qualified immunity claim.

**6.** *Floyd*, 2003 WL 23101802, at * 9 (holding that the defendants were entitled to qualified immunity because they proved that they would have taken the same action even if the Plaintiff had not filed a grievance); *Saucier*, 533 U.S. at 206, 121 S.Ct. 2151 (holding that qualified immunity applies to protect officials for reasonable mistakes).